# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

JAMES YOUNG,
    *Plaintiff*,
    v.
JENNA RAZZ-WELLINGTON, ET AL.,
    *Defendant*.

No. 3:24-cv-00117 (MPS)

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On April 24, 2022, Stratford police officers Kenneth Kubel and Uriel Jarrett responded to a report that a father was threatening his son at 15 Rosedale Terrace. Upon arriving at the residence, the officers investigated but did not find evidence of a crime. During their investigation, however, they discovered that the police in Fairfield, Connecticut had an outstanding arrest warrant for the father, James Young. Acting on the reported warrant, Kubel and Jarrett placed Young in custody and transported him to the Stratford Police Department. Young remained there for about an hour before being transferred to the custody of the Fairfield Police.

Young filed this Section 1983 action against Kubel and Jarrett, along with Officer James Iannucci (an alleged supervisor) and the Town of Stratford (collectively, the "Stratford Defendants"). He alleges that his arrest and subsequent detention violated the Fourth, Eighth, and Fourteenth Amendments of the Constitution. The defendants now move for summary judgment. ECF No. 83. For the reasons below, the Court GRANTS their motion.[1]

---

[1] As the caption above suggests, there are other defendants in this case, and those defendants—officers of the Fairfield Police Department and the Town of Fairfield—have also filed for summary judgment. See ECF No. 87. The Fairfield Defendants are represented by separate counsel and the causes of action Young brings against them are predicated on distinct conduct not at issue here.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The facts below are taken from the parties' Local Rule 56 Statements. ECF Nos. 83-2, 89-2. Not all of these facts are undisputed: Young denies a significant portion of the material facts set forth in the defendants' statement. However, many of these denials fail to create a genuine issue of fact because they are unsupported by the record. *See DeLotch v. Wal-Mart Stores, Inc.*, No. 06-cv-5483, 2008 WL 11395591, at *2 (S.D.N.Y. June 16, 2008) ("A nonmovant's unsupported denials of the movant's evidence, without more, cannot create disputes of material fact.").

For example, Young denies the assertion that Jarrett was "notified by dispatch that [Young] had a warrant for his arrest out of Fairfield." ECF No. 83-2 ¶ 8; ECF No. 89-2 at 5 ¶ 8. In his denial, he cites portions of his verified complaint, along with his own deposition testimony and the deposition testimony of Jarrett. *Id.* First, the portions of the complaint he cites, paragraphs 13 and 27, are vague and conclusory. *See id.* ¶ 13 ("At all times relevant herein, Young was not engaged in any criminal activity."); *id.* ¶ 27 ("On or about April 24, 2022, d. Kubel [and] d. Jarrett . . . at 15 Rosewood Terrace in Stratford Connecticut unlawfully searched and seized Young without provocation, without his consent, without him committing a crime and without a warrant."). These allegations, sworn or not, cannot create a genuine issue of material fact. *See Mitchell v. Dep't of Corr.*, No. 05-cv-5792, 2008 WL 744041, at *7 (S.D.N.Y. Feb. 20, 2008) ("[A] verified complaint, like an affidavit, cannot create a genuine issue of material fact 'by the presentation of assertions that are conclusory.'").

Second, neither his nor Jarrett's testimony rebuts the defendants' assertion that dispatch notified Jarrett about the warrant for Young's arrest. The cited portions of Jarrett's testimony state only that Jarrett "didn't have a physical warrant in-hand," ECF No. 89-3 at 3, and that, because "there was no violation committed," *id.* at 8, they did not arrest Young "for any crime." *Id.* at 7.

In Young's own cited testimony, he states he told Kubel and Jarrett they were on private property illegally, ECF No. 89-4 at 4, and twice states that "there was never a warrant." *Id.* at 6, 10. This testimony is not responsive to the assertion that Jarret was *notified* there was a warrant for Young's arrest, and Young's citation of his own conclusory deposition testimony cannot create a genuine issue of material fact. *See Meiji v. Roma Cleaning, Inc.*, 751 Fed. App'x 134, 137 (2d Cir. 2018) (summary order) ("The so-called 'disputed' facts on which Plaintiff relies are largely conclusory assertions taken from her own deposition testimony and affidavit . . . Such evidence is insufficient to defeat summary judgment.").

Where Young has denied a fact but failed to properly support his denial under Federal Rule of Civil Procedure 56, the Court accepts that fact as true for the purposes of this ruling and recites it below. *See* FED. R. CIV. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."); *Black v. Wrigley,* No. 16-cv-430, 2021 WL 4932129, at *1 n.1 (E.D.N.Y. Sept. 21, 2021), *aff'd*, No. 21-2553, 2023 WL 2591014 (2d Cir. Mar. 22, 2023) (deeming "admitted facts in opposition to which a party cites a source that does not in fact support the denial").

### A. Facts

"On April 24, 2022, at approximately 11:31 a.m.," Kubel and Jarrett "were dispatched to 15 Rosedale Terrace in Stratford, Connecticut in response to a complaint of a father threatening his son." ECF No. 83-2 ¶ 1. The residence located at 15 Rosedale Terrace belongs to the family of Young's ex-wife. *Id.* ¶ 2. Kubel arrived at the scene first. *Id.* ¶ 3. He spoke with Young's son, who told him that Young had threatened to call the police for a "well-being check" if his son did not open his bedroom door. *Id.* After speaking with the son, Kubel then approached Young, who was

seated "on the rear steps of the residence." *Id.* ¶ 4. Young expressed to Kubel "that it was his constitutional right not to answer questions from the police." *Id.* Around this time, Jarrett also arrived on the scene. *Id.* ¶ 5. Jarrett "remained with [Young] as [ ] Kubel continued to investigate the incident." *Id.* During his investigation, Kubel "obtained [Young]'s identity and date of birth from [Young]'s son and ex-wife." *Id.* ¶ 6. "Utilizing that information, [ ] Kubel was informed of an active arrest warrant for [Young] out of the Fairfield Police Department for violating a protective order with a $75,000 bond." *Id.* ¶ 7. "After confirming the existence of [the] warrant, the Plaintiff was handcuffed and searched for weapons . . . before being transported to the Stratford Police Department." *Id.* ¶ 13. At approximately 12:41 p.m., the Fairfield Police took custody of Young. *Id.* ¶ 14. Young's "detention" "was based on the outstanding warrant for his arrest," *id.* ¶ 15, and Kubel and Jarrett did not detain Young "due to any criminal charges stemming from the domestic disturbance call." *Id.* "At no point did [Kubel and Jarrett] conduct a search of the 15 Rosedale Terrace property." *Id.* ¶ 16.

### B. Procedural Background

Young sued Kubel and Jarrett, along with Iannucci—a purported supervisor—in their individual and official capacities. ECF No. 1 ¶¶ 8, 9; *id.* ¶ 10 ("Defendant official supervisor Sergeant James Iannucci . . . was acting as a . . . supervising Sergeant Official . . . of the municipality of Stratford."). He also sued the Town of Stratford, alleging that the Town "maintains a pattern and practice of depriving liberties and property" and that it failed to "properly train and supervise its employees . . . with respect to individuals' rights as protected by the Constitution . . ." *Id.* ¶¶ 60, 63. Filing suit under 42 U.S.C. Section 1983,[2] Young brings claims under the Fourth, Eighth, and Fourteenth Amendments to the Constitution. ECF No. 1 at 6-7.

---

[2] In his complaint, Young also invokes 42 U.S.C. Sections 1985, 1986, 1988, *see* ECF No. 1 ¶ 1, but he brings no claims under those statutes. In any event, Section 1988 does not provide an independent cause of action, and there are

Following some initial unsuccessful motion practice by Young, the Court "strongly recommended" that he "consult with the managing attorney at the Federal Pro Se Legal Assistance Program," ECF No. 44, but there is no indication that he did so. On June 19, 2024, Kubel passed away, ECF No. 45, and Young filed motions to substitute Kubel. ECF Nos. 53, 69. The Court denied those motions. ECF Nos. 54, 72. After denying Young's second substitution motion, the Court gave Young another opportunity to file a substitution motion by March 3, 2025. ECF No.72. On March 12, 2025, Young instead moved for leave to amend his complaint. ECF No. 79. Among the proposed amendments was substituting Ann Kubel, Kubel's wife, for Kubel. *Id.* at 3. The Court denied Young's motion to amend because he filed it seven months after the deadline for amended pleadings and because he failed to demonstrate good cause. ECF No. 80. The Court's ruling did not address the merits of Young's proposed substitution, though, if it had, it would have denied the motion on the merits, as nowhere in the motion or the attached proposed complaint does Young explain why Ms. Kubel is a proper party for substitution—the same deficiency that existed in Young's previous two substitution motions. *See* ECF No. 54; ECF No. 72 ("[Young] does not explain why Ms. Kubel is a 'proper party' for substitution . . . .").[3]

Following discovery, the Stratford Defendants moved for summary judgment. ECF No. 83. Young argues that "multiple material disputes exist" including: 1) "whether a valid arrest warrant or affidavit existed"; 2) "whether probable cause supported the arrest"; 3) "whether exigent

---

no allegations in the complaint and no evidence in the record to suggest a conspiracy motivated by racial animus, or negligence to act upon knowledge of such a conspiracy, which are required elements of Sections 1985 and 1986, respectively. *See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087–88 (2d Cir. 1993) ("[T]he conspiracy [under Section 1985] must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus . . . .") (internal quotations omitted); *Id.* ("§ 1986 provides a cause of action against anyone who having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed, and having power to prevent or aid, neglects to do so.") (internal citations omitted).

[3] As it presently stands, Kubel remains a defendant in this action. I need not decide whether to dismiss the claims against him under Rule 25 because I conclude that the claims against him fail as a matter of law.

circumstances or consent justified entry"; and 4) "whether the protective order was valid at all." ECF No. 89-1 at 26.

## II.    LEGAL STANDARD

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (internal quotation marks and citations omitted). In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact. More specifically, it must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Id.* (internal quotation marks omitted). Finally, the Court must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they

suggest." *Bertin v. U.S.*, 478 F.3d 489, 491 (2d Cir. 2007) (internal citations and quotations omitted).

### III.    DISCUSSION

The Stratford Defendants have moved for summary judgment on all of Young's claims, ECF No. 83, and Young opposes the motion. ECF No. 89. As explained below, because Young has not raised any genuine issues of material fact, the defendants are entitled to judgment as a matter of law.

### A.  Claims Against Police Officers

#### 1.  *Officer Iannucci*

Young's complaint brings claims against Iannucci as a "supervisor" of Kubel and Jarett. ECF No. 1 ¶ 66 ("[D]efendants Kubel, Jarrett and Sergeant Iannucci their supervisor of Stratford Police Department, were acting within the scope of their presumed duties . . . ."). Supervisors cannot be vicariously liable for the actions of their subordinates under Section 1983. *Meriwether v. Coughlin*, 879 F.2d 1037, 1046 (2d Cir. 1989) ("There is, of course, no vicarious liability in section 1983 actions."). Instead, to be liable under Section 1983, a supervisor must have been "personally involved" in the constitutional violation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotations omitted).

The record contains no evidence that Iannucci was personally involved in the events that occurred on April 24, 2022, nor is there evidence that he was even a supervisor at that time. As admitted in Young's Local Rule 56 Statement, ECF No. 89-2, Iannucci was a patrol officer on April 24, 2022 and "was not promoted to Sergeant, a supervisor position, until January 1, 2024."

ECF No. 83-2 ¶ 18. Young also admits that Iannucci "never had any interactions with [Young] in his capacity as a police officer," *id.* ¶ 19, that he "was not dispatched to 15 Rosedale Terrace on April 24, 2022," *id.* ¶ 20, that he "did not participate in any decisions related to [ ] Young's arrest, detention or transport," *id.*, and that he "only became aware of [Young]'s interaction with the Stratford Police Department after receiving a copy of th[e] lawsuit." *Id.* ¶ 22. Because it is undisputed that Iannucci was not personally involved in the April 24, 2022 incident, no reasonable juror could find Iannucci liable under Section 1983. The Court grants summary judgment in his favor.[4]

### 2. *Officers Kubel and Jarrett*

Young has sued Kubel and Jarrett in their individual and official[5] capacities, claiming that the officers violated his Fourth, Eighth, and Fourteenth Amendment rights. ECF No. 1 ¶¶ 8, 9, 50-59. Kubel and Jarrett deny this claim and argue that, in any event, they are entitled to qualified immunity because their "actions were objectively reasonable under the circumstances." ECF No. 83 at 2-3. Because there is no evidence in the record to suggest that Kubel and Jarrett violated Young's constitutional rights, the Court grants summary judgment in their favor and declines to address whether the pair are also entitled to qualified immunity.

---

[4] Young filed a motion to amend the complaint, seeking, in part, to drop Iannucci as a defendant and add Sergeant Joseph Maida. ECF No. 79 at 3. As previously stated, the Court denied this motion to amend both because it was untimely and because it failed to demonstrate good cause. ECF No. 80. But any such amendment would have been futile. Maida's deposition testimony indicates he was not personally involved in the April 22, 2022 incident, *see, e.g.*, ECF No. 89-6 at 4-5 (Young: "So, your subordinate officers didn't have anyone's consent to interact with Mr. Young?" Maida: "Again, I cannot speak of the incident, as I was not there that day or on scene."), and Young offers no evidence to suggest that he was.

[5] "[C]laims against [ ] officers in their official capacities are essentially claims against the municipality that employs them." *Westry v. City of Waterbury*, No. 3:22-cv-686, 2023 WL 3259878, at *6 n.3 (D. Conn. May 4, 2023). The Court addresses such *Monell* claims further below.

a. <u>Fourth Amendment Claims</u>

*Search and Seizure of Young*

Young's Fourth Amendment claims are predicated primarily on his April 24, 2022 arrest. He argues that, when Kubel and Jarrett arrested him, they "did not possess a valid Fourth Amendment warrant" and the arrest was therefore unconstitutional. ECF No. 89-1 at 13. There is no evidence in the record to support Young's argument.

The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. As the text suggests, the Fourth Amendment "does not require that every search be made pursuant to a warrant." *South Dakota v. Opperman*, 428 U.S. 364, 372 (1976). Instead, it requires only that searches and seizures be reasonable. *Id.* at 372-73 ("[The Fourth Amendment] prohibits only *unreasonable* searches and seizures.") (emphasis added). Because a warrant must be supported by probable cause, the existence of an arrest warrant establishes a presumption of reasonableness. *Walczyk v. Rio*, 496 F.3d 139, 155-56 (2d Cir. 2007) ("Ordinarily, an arrest or search pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause.").

Young's Fourth Amendment claims rest on two assertions. First, according to Young, Kubel and Jarrett could not have arrested him unless they physically possessed a warrant. *See* ECF No. 89-1 at 15 ("Even if a warrant existed in a database, Payton requires the warrant itself; absence of production renders the entry . . . unconstitutional."); *id.* at 14 ("[Kubel and Jarrett] should have

given [Young] a copy of the warrant if it were valid pursuant to C.G.S. 54-33c.[6]"). Second, Young asserts that his arrest was unlawful because the warrant itself was defective. *See id.* ("The protective order at issue was void ab initio: there was no victim, no crime, no sworn affidavit, and no probable cause. The Supreme Court has made clear, a void or [c]onstitutionally defective warrant cannot justify state action."). Neither assertion has merit or evidentiary support.

First, "[t]here is no constitutional obligation on the part of law enforcement to show an arrestee a copy of the warrant at the time of arrest." *Parkman v. O'Connor*, No. 3:18-cv-1358, 2019 WL 2015899, at *3 n.6 (D. Conn. May 6, 2019). Instead, the Constitution requires only that the arrest be supported by probable cause. *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964) ("Whether th[e] arrest was constitutionally valid depends . . . upon whether, at the moment the arrest was made, the officers had probable cause to make it . . . .").

It is undisputed that Kubel and Jarrett did not have probable cause to arrest Young for conduct related to the reported domestic dispute, but they did not arrest him for that dispute. *See, e.g.*, ECF No. 83-2 ¶ 15 ("Stratford Police Officers detained [Young] . . . not due to any criminal charges stemming from the domestic disturbance call on April 24, 2022."). They *did* have probable cause to arrest Young upon being informed that there was an active warrant for his arrest. According to Kubel, NCIC—a law enforcement database—confirmed the warrant's existence. *See* ECF No. 83-3 at 2-3 (Kubel's Police Report) ("NCIC confirmed a warrant for [Young] out of the Fairfield Police Department . . . ."). Young claims that Kubel and Jarrett's reliance on this "computer entry" was inadequate, ECF No. 89-1 at 14, but he is mistaken. "When an officer learns

---

[6] Young's reliance on CONN. GEN. STAT. § 54-33c is misplaced. The statute, which requires the police to provide a copy of a search warrant to the owner or occupant of the property searched, applies to search warrants, not arrest warrants. *Siddiqui v. Rocheleau*, No. 3:18-cv-00839, 2019 WL 12239678, at *17 (D. Conn. May 15, 2019) ("Section 54-33c . . . is a criminal statute that 'sets forth the procedure for applying for search warrants.'"). Furthermore, Young brings no state law claims and "a violation of a state law or regulation, in and of itself, does not give rise to a violation of the United States Constitution or a federal law, for purposes of 42 U.S.C. § 1983." *Standley v. Dennison*, No. 9:05-cv-1033, 2007 WL 2406909, at *8 (N.D.N.Y. 2007).

from a computer database . . . that a person is the subject of an outstanding arrest warrant, probable cause exists to arrest that person." *U.S. v. Miller*, 265 Fed. App'x 5, 7 (2d Cir. 2008) (summary order); *see also U.S. v. Ross*, No. 21-cr-571, 2023 WL 6160436, at *8 (E.D.N.Y. July 31, 2023) (recommended ruling) ("An NCIC report containing an arrest warrant can establish probable cause for an arrest.") (citing cases), *adopted*, 2023 WL 6158840 (E.D.N.Y. Sept. 21, 2023).

Second, Young's claim that the warrant was defective because it was unsupported by affidavit or probable cause and that the protective order underlying the warrant was "void ab initio," ECF No. 89-1 at 17, is irrelevant and in any event finds no support in the record. It is irrelevant because the NCIC report gave Kubel and Jarrett all they needed to arrest Young: The officers were not required to look into the facts supporting the warrant. *See Dirienzo v. U.S.*, 690 F. Supp. 1149, 1154 n.4 (D. Conn. July 12, 1988) ("The arresting officer need not inquire into the merits of a facially valid arrest warrant before execution. Indeed, once probable cause for the arrest has been established by a judicial officer and an arrest warrant has been issued, the warrant compels arrest and a law enforcement officer ignores this command at his peril."); *cf. Benjamin v. U.S.*, 554 F. Supp. 82, 86 (E.D.N.Y. 1982) (an officer executing a warrant physically located in another jurisdiction "must exercise reasonable care and diligence in ascertaining both that a warrant indeed exists and that this individual is the suspect named in the process," but "if the correct person is arrested . . . no liability for false arrest exists."). It would unduly hinder law enforcement to require each officer who was executing a warrant to verify the accuracy of the statements in the warrant affidavit, to confirm the neutral magistrate's determination of probable cause, or even to check the accuracy of an NCIC report about the warrant, absent some reason to doubt the validity of the warrant.

Further, the record does not support Young's attack on the warrant. Young's state court charges remain unresolved, *see* ECF No. 83-5 at 4 (Question: "And it's your understanding that the charges remain pending against you. They haven't gone to trial or anything like that?" Young: "False charges are being unlawfully prosecuted because they don't have standing . . . ."), and he has pointed to no judicial determination questioning the warrant. He provides no other evidence to support his claim that the warrant was "void ab initio," instead relying on the same conclusory or otherwise non-probative testimony the Court previously mentioned was incapable of creating a genuine dispute of material fact. *See, e.g.*, ECF No. 89-2 at 6 ¶ 10 (citing the same deposition testimony discussed in the Factual and Procedural Background, *supra*, Part I). The record includes both the warrant and the warrant application, ECF No. 83-6, and these documents appear to contain none of the infirmities Young identifies. The warrant was signed by a Superior Court Judge. *See id.* at 2. Furthermore, the warrant application is supported by affidavit and—in its "Finding" section, also signed by the same judge—it expressly states that, based on the affidavit, "there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused." *Id.* at 3. Absent evidence to the contrary, there is no dispute that the warrant, issued upon probable cause and "supported by Oath or affirmation," is constitutionally adequate. *See* U.S. CONST. amend IV.

Because Kubel and Jarrett had probable cause, their seizure and subsequent search of Young was reasonable and therefore constitutional. *See Arizona v. Gant*, 556 U.S. 332, 338 (2009) ("Among the exceptions to the warrant requirement is a search incident to a lawful arrest. The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations.") (internal citations omitted).

*Intrusion onto the Property at 15 Rosedale Terrace*

Though Young's Fourth Amendment claims, as alleged in his complaint, appear limited to the search and seizure of his person, *see* ECF No. 1 ¶ 52 ("The unlawful search, seizure and false arrest of [Young] were in violation of his reasonable expectation of rights as secured by the Fourth Amendment to the United States Constitution."), Young's deposition questions and his brief suggest that he is also claiming that Kubel and Jarrett intruded on 15 Rosedale Terrace without a warrant. *See, e.g.*, ECF No. 89-6 at 7-8 (Maida's Testimony) (Question: "Okay. And that was private property?" Answer: "I don't know." Question: "And you need a warrant to search private property, correct?"); ECF No. 89-1 at 18 ("Consent to enter a home must be clear, voluntary, and unequivocal. [Young] never gave consent, nor do Defendants claim otherwise. Accordingly, both recognized exceptions to the warrant requirement are absent, leaving the entry unlawful under *Payton*.") (internal citations omitted).

There is no dispute that the Kubel and Jarrett walked onto the property. *See, e.g.*, ECF No. 83-4 at 9 (Jarrett's Testimony) ("We were called there to conduct an investigation, yes. Yes, we walked on to the property."). And there is no evidence to suggest they had a warrant to do so. Because a warrantless intrusion upon a private residence has Fourth Amendment implications, and because, on a motion for summary judgment, the Court must read Young's briefs to raise the strongest arguments they suggest, the Court will address this intrusion as part of Young's Fourth Amendment claims.

"Absent consent or exigent circumstances, a private home may not be entered to conduct a search or effect an arrest without a warrant." *Donovan v. Dewey*, 452 U.S. 594, 599 n.6 (1981). Here, the record reflects that the officers entered the home's backyard, rather than the home itself. *See, e.g.*, ECF No. 83-3 at 2 ("[Young] was sitting on the rear steps of the residence but refused to

answer any questions from Officer Jarrett and I."). A backyard, in some instances, constitutes "curtilage" and is therefore entitled to the same Fourth Amendment protections that apply to the home. *See Harris v. O'Hare*, 770 F.3d 224, 240 (2d Cir. 2014) (holding that, at the time defendant police officers engaged in the alleged unlawful conduct, "it was [ ] clearly established that a fenced-in side or backyard directly abutting a single-family house constitutes curtilage"). Fourth Amendment rights, however, are also "personal to an individual." *U.S. v. Maher*, 120 F.4th 297, 319 (2d Cir. 2024). That means Young cannot challenge the officers' intrusion unless he himself had a reasonable expectation of privacy as he sat on the backsteps of the residence. *See U.S. v. Payner*, 447 U.S. 727, 731 (1980) ("[T]he defendant's Fourth Amendment rights are violated only when the challenged conduct invaded *his* legitimate expectation of privacy rather than that of a third party.") (emphasis in original). There is no evidence to suggest that he did.

It is undisputed that the residence did not belong to Young. *See, e.g.*, ECF No. 83-2 ¶ 2 ("[Young]'s ex-wife, Rose Young's family owned 15 Rosedale Terrace."); ECF No. 89-4 at 4 (Young's Testimony) (Question: "Who else was living there at that time aside from Rose and Zachary?" Answer: "That's Rose's mother's house."). Instead, by his own admission, Young was a visitor, and visitors generally lack a reasonable expectation of privacy in another's home. *See id.* at 4-5 ("We were visiting. It was a family event. We were visiting. There were other people there."); *Minnesota v. Carter*, 525 U.S. 83, 90 (1998) ("[O]ne who is merely present with the consent of the householder may not [claim the protection of the Fourth Amendment]."). While a visitor who stays overnight does have a reasonable expectation of privacy, *see Minnesota v. Olson*, 495 U.S. 91, 98 (1990) ("To hold that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the everyday expectations of privacy that we all share."), there is no evidence to suggest Young was an overnight guest, nor would it be reasonable to infer

from the evidence that Young—one among "5 to 10 people" present during a family-gathering—would be spending the night. *See* ECF No. 89-4 at 5 (Question: "Just a gathering?" Answer: "A get-together." Question: "Who else do you recall being there that day w[hen] Stratford police arrived?" Answer: "I won't be able to name them specifically, but there might have been like, you know, 5 to 10 people. But they come and go, the grandkids and all."). Accordingly, if and when Kubel and Jarrett walked onto the residence's curtilage, they did not violate Young's constitutional rights.

The evidence fails to create a genuine dispute as to whether Kubel and Jarrett violated Young's Fourth Amendment rights. On the basis of this record, they did not. Accordingly, the Court grants summary judgment in their favor as to Young's Fourth Amendment claims.

      b.  <u>Eighth Amendment Claims</u>

Young's complaint alleges that, because of the defendants' conduct on April 24, 2022, Young was subjected to "cruel and unusual punishment," "excessive and unlawful bail," and "unlawful imprisonment." ECF No. 1 ¶¶ 57, 58, 59. The defendants argue that Young's "Eighth Amendment claim fails because [the amendment's] protections apply to a person who has [been] criminally convicted and sentenced, and the undisputed facts establish that [Young]'s underlying criminal case remains pending." ECF No. 83-1 at 14. They also argue that Young's "complaints about bail or the conditions of his release stem from decisions made by neutral judges or other individuals and not the Stratford Defendants." *Id.* at 16. The Court agrees.

The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. CONST. amend VIII. Its prohibition against cruel and unusual punishment, however, applies only to those who have been criminally convicted and sentenced. *See Whitley v. Albers*, 475 U.S. 312, 318 (1986) ("The Cruel

and Unusual Punishments Clause was designed to protect those convicted of crimes, and consequently the Clause applies only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.") (internal quotations and citations omitted). Young has provided no evidence to suggest that the criminal charges associated with his April 24, 2022 arrest resulted in a conviction or criminal sentence. To the contrary, upon being asked about the pendency of the state criminal action, Young indicated that the case is ongoing. *See* ECF No. 83-5 at 4 (Question: "Okay. And it's your understanding that the charges remain pending against you. They haven't gone to trial or anything like that?" Answer: "False charges are being unlawfully prosecuted because they don't have standing. And I know you know what that is."). Kubel and Jarrett are accordingly entitled to summary judgment as to Young's cruel and unusual punishment claim.

As to Young's other Eighth Amendment claim—the one associated with his bail—Young has failed to adduce evidence that any of the Stratford Defendants were personally involved in any bail decisions.

For the above reasons, no reasonable jury could find that Kubel and Jarrett violated Young's Eighth Amendment rights. The Court grants summary judgment in their favor as to these claims.

      c.   Fourteenth Amendment Claims

Young brings claims under the Fourteenth Amendment alleging that by "searching, seizing, and jailing him," the defendants violated his due process rights. ECF No. 1 ¶¶ 54, 55. For many of the same reasons previously mentioned, these claims also fail.

The Fourteenth Amendment's Due Process Clause prohibits States from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. This

clause has both a procedural and a substantive component, meaning it "guarantees more than fair process" and also bars "certain government actions regardless of the fairness of the procedures used to implement them." *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021) (internal quotations omitted). As a threshold manner, Young cannot bring claims of substantive due process predicated on conduct that falls within the ambit of other constitutional protections. *Conn v. Gabbert*, 526 U.S. 286, 293 (1999) ("We have held that where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process.") (internal quotations omitted). He therefore cannot claim his substantive due process rights were violated based on any unlawful search, seizure, or excessive bail. Nor can he bring such a claim predicated on his alleged prolonged pretrial detention. *See* ECF No. 1 ¶ 32 ("Young was not sentenced yet unlawfully imprisoned for 522 days plus from September 2023 to present . . . ."); *Russo v. City of Bridgeport*, 479 F.3d 196, 208-09 (2d Cir. 2007) (holding that plaintiff's substantive due process claim based on prolonged detention "fits comfortably under the coverage of the Fourth Amendment," and therefore, "the Fourth Amendment, rather than substantive due process, should serve as the guide for analyzing th[e] claims") (internal quotations omitted).

As to any claims arising from Young's right to procedural due process, courts in this Circuit have similarly held that such claims "cannot be predicated upon the same factual basis as claims pursuant to the Fourth Amendment." *Karcz v. City of North Tonawanda*, No. 16-cv-0628, 2024 WL 5239726, at *5 (W.D.N.Y. Dec. 27, 2024) (citing *Levantino v. Skala*, 56 F. Supp. 3d 191, 203 (E.D.N.Y. 2014) (collecting cases)). Moreover, because Young's arrest was supported by probable cause, it satisfied Young's right to due process. *See U.S. v. McDermott*, 918 F.2d 319, 325 (2d Cir. 1990) ("Due process requires probable cause for an arrest . . . ."); *Ortiz v. Vill. of Monticello, N.Y.*,

No. 06-cv-2208, 2012 WL 5395255, at *10 (S.D.N.Y. Nov. 2, 2012) ("Because the Court has already found that the Officers had . . . probable cause to detain Plaintiffs, 'there was no violation of [Plaintiffs'] substantive or procedural due process rights' regarding their detention.") (alterations in original). As to any due process claims arising from what Young alleges happened to him after his arrest, the Court reiterates that he has provided no evidence indicating that Kubel and Jarrett were involved in the setting of bail or the conditions of his release. Nor has he provided evidence suggesting they were involved in his pretrial detention. *See Wilson v. City of New York*, 480 F. App'x 592, 594-95 (2d Cir. 2012) (summary order) ("In the absence of evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment [in a detention decision], the intervening exercise of such judgment by . . . the judge breaks the chain of causation for purposes of § 1983 liability for the plaintiff's incarceration.") (internal quotations omitted).

For these reasons, the Court grants summary judgment in favor of Kubel and Jarrett as to Young's Fourteenth Amendment claims.

## B. Claims Against the Town

Young's complaint brings two claims against the Town of Stratford—one predicated on the Town's "policy of depriving innocent people of due process and violating clearly established law," ECF No. 1 ¶ 62, and the other on the Town's failure "to properly train and supervise its employees . . . with respect to individuals' rights as protected by the Constitution." *Id.* ¶ 63. These claims are brought under *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978). In *Monell*, the Supreme Court extended Section 1983 liability to local governments if the alleged unconstitutional act arose from that government's policy or custom. *See id.* at 690-91 ("Local governing bodies . . . can be sued directly under § 1983 . . . where . . . the action that is alleged to

18

be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover . . . local governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' . . . ."). The Court subsequently held that a local government's "failure to train" could, "in limited circumstances . . . rise to the level of an official government policy for purposes of § 1983" *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

*Monell* "extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006). Accordingly, because a constitutional violation is a prerequisite to any finding of municipal liability, the municipality is entitled to summary judgment where that prerequisite is absent. *See Thomas v. Genova*, No. 23-7452, 2025 WL 583182, at *5 (2d Cir. Feb. 24, 2025) (summary order) ("[T]here can be no municipal liability where there is no underlying constitutional violation . . . Because . . . no reasonable jury could find a constitutional violation here, the district court properly granted summary judgement to the Town on Plaintiffs' *Monell* claim."). The defendants argue that they are entitled to summary judgment on Young's *Monell* claims because Young has failed to establish that he "suffered a constitutional violation." ECF No. 83-1 at 19. The Court agrees.

As discussed above, there is no genuine dispute that Kubel and Jarrett had probable cause to arrest Young. Though Young argues, in defense of his *Monell* claims, that the defendants admitted to the absence of probable cause, *see* ECF No. 89-1 at 21 ("Yet Defendants' own depositions admit: no warrant, no affidavit, no probable cause . . . ."), this argument misconstrues the deposition testimony. To the contrary, the defendants have provided evidence of probable cause—the warrant and accompanying application and affidavit, ECF No. 83-6, and the

defendants' testimony corroborates that evidence. *See, e.g.*, ECF No. 89-6 at 4 (Maida's Testimony) ("It was confirmed through dispatch, NCIC, and the Town of Fairfield that there was an active arrest warrant."). Because nothing in the record suggests that Kubel and Jarrett violated Young's constitutional rights, the policies or training that guided their actions cannot serve to subject the Town to liability. Accordingly, the Court grants summary judgment to the Town.

## IV.     CONCLUSION

The defendants' motion for summary judgment (ECF No. 83) is GRANTED. The Clerk is directed to terminate Kubel, Jarrett, Iannucci, and the Town of Stratford as defendants in this action. Young's motion for summary judgment against the Stratford Defendants (ECF No. 95) is DENIED. Furthermore, that motion, properly construed, is procedurally improper, as it appears to be a sur-reply to the Stratford Defendants' reply to Young's opposition brief. *See* ECF No. 95 ("Plaintiff submits this response to the Stratford Defendants' Reply in Support of Summary Judgment . . . ."). Such sur-replies are not permitted without permission of the Court, which was not sought or granted in this case. *See* L. Civ. R. 7(d) ("No sur-replies may be filed without permission of the Court, which may, in its discretion, grant permission upon a showing of good cause.").

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
         January 6, 2026